# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville October 15, 2013

## STATE OF TENNESSEE v. CURTIS WORD

**Appeal from the Circuit Court for Moore County**
**No. 1254    Robert Crigler, Judge**

**No. M2013-01282-CCA-R3-CD - Filed February 20, 2014**

The Defendant, Curtis Word, challenges the trial court's sentence of incarceration, alleging that nothing in the record overcame the presumption that he was a favorable candidate for alternative sentencing and requesting that this court place him on probation or community corrections. Upon consideration of the applicable authorities and the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Donna Orr Hargrove, District Public Defender; and Andrew Jackson Dearing, Assistant Public Defender, for the appellant, Curtis Word.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Robert Carter, District Attorney General; and Hollynn Eubanks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The record reflects that the Defendant was indicted on October 25, 2012, for alternative counts of knowingly selling or delivering Alprazolam, a Schedule IV controlled substance, which is a Class D felony. See Tenn. Code Ann. § 39-17-417. The Defendant entered an open guilty plea on February 22, 2013, to knowingly selling a Schedule IV controlled substance with the sentence to be determined at a later sentencing hearing; the alternative delivery count was dismissed.

At the guilty plea hearing, the State offered the following factual basis for the plea:

> Special Agent Larry Campbell of the Moore County Sheriff's Department was running a drug operation, done in the manner that most of them are done, although he had an additional factor in this one.
>
> In the normal and usual thing he has a CI that makes contact. However, it is not merely just the undercover civilian that goes but he had a CI who is an undercover police officer who actually was the other side of this transaction.
>
> On October 16, 2011, conducting this type of undercover operation, that undercover police officer purchased six small pills from Mr. Word here in Moore County, Tennessee, in return for cash.
>
> Those pills were sent to the Tennessee Bureau of Investigation's lab where they were analyzed and determined to be [A]lprazolam, a Schedule IV controlled substance.

The Defendant agreed that the proffered factual basis adequately described what happened in the case and that it was his decision to plead guilty.

On April 19, 2013, the Defendant's sentencing hearing was held, and the following evidence adduced. As a preliminary matter, the State submitted the guilty plea hearing transcript, the Defendant's presentence report, and the judgments of prior convictions as evidence at the sentencing hearing.

The Defendant testified that he was forty-eight years old, that he had severe physical health issues, and that he had been suffering with pain daily since his involvement in a near-death car accident in 1989. The Defendant explained that he had sustained the following injuries in that 1989 accident and was not initially expected to live: crushed both of his hips, knees, and jaws; lost his left eye; had a heart attack; and died twice.

In 2000, the Defendant was involved in a second accident in which he broke his neck and was paralyzed from the neck down for approximately thirty-seven months and eleven days. The Defendant testified that he currently wore an ankle brace due to a crushed ankle, was in the third stage of kidney failure, and had pancreatitis and diabetes. As a result, he had been prescribed five to six medications, one of which was hydrocodone, and took approximately thirteen pills per day. He testified that was being monitored by three doctors, all in Nashville; that there was nothing his doctors could do about his pancreatitis, his kidney failure, or his joint pain; and that his doctors believed that he was deteriorating quickly.

The Defendant testified that he received a social security check, but that it does not pay all of his bills, and that he has money issues. He further testified that, in the past, he had used drugs that he had not been prescribed to alleviate his pain because he could not pay for his prescriptions. On cross-examination, the Defendant admitted that he received TennCare and that it covered some of the costs of his prescriptions, but not all of them. He further admitted that he had a criminal history involving drugs that spanned over twenty years. Turning to the specific facts of the case at bar, the Defendant also admitted that he received the alprazolam he was convicted of selling from a friend. He explained that "a girl" kept calling him and asking for "Xanax," that he told her that he did not have any drugs, and that he only sought out the drugs because the girl was persistent.

In rebuttal, the State called Moore County Sheriff Mark Logan who testified that he had been in law enforcement in Moore County for thirty-five years, twenty-seven of which as the sheriff. He further testified that Moore County employed a full-time narcotics officer, the arresting officer in the Defendant's case, and that the narcotics officer was needed in the small county because they have a serious drug problem. Sheriff Logan explained that most drug users ended up in jail because they committed theft to support their drug habit. On cross-examination, Sheriff Logan testified that he had known the Defendant all of his life and corroborated the Defendant's testimony that he had been involved in a near-death accident and was "really lucky to be alive." He admitted that it was possible that he had requested that the Defendant's bond be lowered so that the county would not have to pay his medical expenses.

After reviewing the evidence and hearing the arguments, the trial court sentenced the Defendant as a Range II, multiple offender, to serve five years in the Department of Correction (DOC), explaining that the light sentence was giving some consideration to the Defendant's medical issues. The trial court found the following mitigating factors applicable: (1) that the conduct neither caused nor threatened serious bodily injury and (13), the catchall factor, that the Defendant pleaded guilty and spared the taxpayers and the State the expense of a trial. See Tenn. Code Ann. § 40-35-113 (1), (13). The trial court also found the following enhancement factors applicable: (1) that the Defendant had a previous history criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, explaining that the Defendant had four prior felony convictions, when only two were required for Range II classification, as well as convictions for driving under the influence and simple assault; and (8) that the Defendant had previously failed to comply with conditions of a sentence involving release into the community, explaining that the Defendant had a total of three probation violations in the past. See Tenn. Code Ann. § 40-35-114 (1), (8). Denying alternative sentencing, the trial court stated,

Confinement is needed to provide an effective deterrent to

people likely to commit these offenses. With this kind of record it sends the wrong message.

Confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct. These things stretch out over the entirety of his lifetime.

Also he has been on probation unsuccessfully in the past. All of this trouble with the law in the past didn't stop him from committing the charge that we are here in court on today.

See Tenn. Code Ann. § 40-35-103.

This appeal followed.


ANALYSIS

The Defendant contends that the trial court improperly denied alternative sentencing, because he does not fall within the parameters of Tennessee Code Annotated section 40-35-102(5) and nothing in the record overcomes the presumption that the Defendant is a favorable candidate for alternative sentencing. On appeal, he implores this court to place him on probation or community corrections so that he can take care of his outstanding debts and not burden the State of Tennessee with those costs. The State responds that all forms of alternative sentencing were properly denied because of the Defendant's criminal history and the ineffectiveness of previous probationary sentences. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d

273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor, the error will not remove the presumption of reasonableness from its sentencing determination. Bise, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Following the June 7, 2005 amendments to our Sentencing Act, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008). Further, Tennessee Code Annotated section 40-35-102(6) is only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Preliminarily, we note that, contrary to the Defendant's argument, after the 2005 amendments to our Sentencing Act, he was no longer entitled to a presumption that he was a favorable candidate for alternative sentencing. See Carter, 254 S.W.3d at 347. Further, because the Defendant's prior convictions classified him as a Range II, multiple offender, he was not even to be considered a favorable candidate for alternative sentencing. The Defendant was, however, eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). A defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The Defendant also contends that he is eligible for community corrections pursuant to Tennessee Code Annotated section 40-36-106 (a) and (c). The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1).

The Defendant does meet the statutory requirements for eligibility in the Community Corrections Program. However, even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d).

The Defendant, by reference, also alleges that he is eligible for community corrections under the "special needs" provision of Tennessee Code Annotated section 40-36-106(c) because he is addicted to pain medication. A defendant may rely on the special needs criteria for eligibility in a community based program, however, only if he or she does not qualify under subsection (a). See Tenn. Code Ann. § 40-36-106(c); State v. Andrea Nichole Bean, No. M2011-02767-CCA-R3-CD, 2012 WL 6698060, at *5 (Tenn. Crim. App. Dec. 26, 2012) (citing State v. Marcus Conner, No. M2007-02514-CCA-R3-CD, 2008 WL 4830726, at *4 (Tenn. Crim. App. Nov. 6, 2008)) (internal quotations omitted). Nevertheless, subsection (c) does not provide the Defendant any relief because he qualified for eligibility under subsection (a). See Tenn. Code Ann. § 40-36-106. Further, the Defendant has demonstrated no proof that he currently suffers from drug abuse; the Defendant testified that his prescribed pain medications are necessary to mitigate the pain but that he could function, although with some difficulty, without them.

As a preliminary matter, the Defendant suggests that his sentence of confinement is not in the best interests of himself or the public because he has a limited life expectancy and because his medical costs will be a burden on the state. However, the Defendant testified that his TennCare medical insurance did not always cover the costs of his many medications, that his social security check did not cover all of his living expenses, and that he often needed more money for food. A sentence of incarceration would remedy those issues. Further, addressing the burden on the state, as the aforementioned illustrates, the Defendant is already on government assistance; thus, his incarceration will not impose a markedly additional burden on the state, just provide support in another medium. We also note that our statutes favor sentences of incarceration for felons committing the most severe offenses as well as

felons with criminal histories indicating a disregard for the law and past failure of rehabilitative efforts, and the Defendant meets the last two criteria.

After reviewing the record and the applicable authorities, we conclude that the trial court did not abuse its discretion in denying probation and alternative sentencing. The trial court found that the Defendant had a long history of criminal conduct, spanning most of the Defendant's lifetime, that involved drugs. The trial court also found that the Defendant had three probation revocations in the past, and this had not deterred his continued criminal activity. Further, the trial court determined that incarceration was necessary to deter others from committing this crime and to protect society from a defendant who had devoted his life to criminal activity. The record supports these findings. As there is no evidence to rebut the presumption of reasonableness afforded the trial court in its sentencing determinations, the Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record and the applicable law, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE